STEPHEN C. HALL v. JAMES L. EDSON ET AL.

*Partnership through receipt of profits—Duration.*

An agreement binding one party to get out lumber for the other during a specified season, the latter receiving a fixed proportion of the net profits of the job above expenses, does not constitute the parties partners, if at all, except for the season specified, even though the agreement was made some time before.

Error to Clare. Submitted April 15. Decided April 24.

ASSUMPSIT. Defendant Hall brings error.

*John A. Edget* for plaintiff in error. A servant, agent or employee may receive a share of profits in lieu of salary, or as commissions on sales, or compensation for services, without incurring the liability of a partner, *Burckle v. Eckhart*, 3 Comst., 132; *Ogden v. Astor*, 4 Sandf., 311; *Newman v. Bean*, 21 N. H., 93; *Reed v. Murphy*, 2 Greene (Iowa), 574; *Bradley v. White*, 10 Met., 303; *Ambler v. Bradley*, 6 Vt., 119; *Blanchard v. Coolidge*, 22 Pick., 151; *Sack v. Howland*, 5 Den., 69; *Rice v. Austin*, 17 Mass., 197; Story on Partnership, § 36; Parsons on Contracts, 159; or he may receive a fixed compensation and a per cent. of the profits; and manufacturers, tradesmen and carriers may stipulate for a fixed price for manufacture and carriage, and a per cent of the profits, without becoming liable as partners, *Loomis v. Marshall*, 12 Conn., 69; *Denny v. Cabot*, 6 Met., 83; *Turner v. Bissell*, 14 Pick., 192; *Merrick v. Gordon*, 20 N. Y., 93; *Dwinel v. Stone*, 30 Me., 384; *Emmons v. Westfield*, 97 Mass., 230; *Chase v. Barrett*, 4 Paige, 160; *Price v. Alexander*, 2 Iowa, 427; *Smith v. Knight*, 71 Ill., 148; *Harvey v. Childs*, 28 Ohio St., 319; when a party sought to be charged as partner has no right to profits as such, the purpose for which a proportion of profits is paid him is immaterial, *Potts v. Eyton*, 3 C. B., 32; sharing profits is only *prima facie* proof of partnership, *Eastman v. Clark*, 53 N. H., 276; *Hickman v. Cox*, 3 C. B. (N. S.), 523; *Bullen v. Sharp*, 18 C. B. (N. S.), 614; *Ross v. Parkyns*, 13 Eng., 837.

*E. D. Wheaton* and *C. W. Perry* for defendants in error. An agreement to share in profits makes the parties liable as partners, *Hinman v. Littell*, 23 Mich., 484; *Leggett v. Hyde*, 58 N. Y., 272; *Wood v. Vallette*, 7 Ohio St., 172; *Wood v. Beath*, 23 Wis., 254; participation in profits as such creates a partnership as to third persons,

*Barry v. Nesham*, 3 M., G. & S., 641; Collyer on Partnership, 67, 68; community of profits in distinction from a stipulated portion of them, as compensation for services, makes a partnership, 3 Kent's Com., 25, n. *b; Champion v. Bostwick*, 18 Wend., 175; *Vanderburgh v. Hull*, 20 Wend., 70; *Barry v. Briggs*, 22 Mich., 201; *Ontario Bank v. Hennessey*, 48 N. Y., 545; *Walden v. Sherburne*, 15 Johns., 409; *Everett v. Coe*, 5 Den., 180; *Dob v. Halsey*, 16 Johns., 40; *Chase v. Barrett*, 4 Paige, 159; *Hesketh v. Blanchard*, 4 East, 144; *Waugh v. Carver*, 2 H. Bl., 247; Story on Partnership, 49.

GRAVES, J. About the 18th of October, 1873, the firm of Edson, Moore & Co., composed of defendants in error, sold and delivered to the firm of Davis & Young a bill of goods amounting to $329.

Payment not being made, and defendants in error conceiving that plaintiff in error, together with Theodore S. Davis and John W. Young, composed the firm of Davis & Young, brought suit against those persons for the demand, and plaintiff in error, insisting that he was not a member of the firm and not liable on the claim, earnestly resisted the action. The others made no defense.

The evidence of most importance in the opinion of the court below to prove that Hall was a member of the firm of Davis & Young was a written contract of the following tenor: ·

"Articles of agreement made this 11th day of August, A. D. 1873, between Stephen C. Hall, party of the first part, and Theodore S. Davis and John W. Young, parties of the second part, witnesseth as follows: Said parties of the second part agree to cut, haul and deliver afloat in the main Muskegon river, *during the winter of 1873 and 1874*, six to eight million feet of pine saw logs from the following lands" (here follows a description of several tracts) "for the sum of $4.50 per M. feet, straight and sound scale; the money to be advanced as the *job progresses* and as *necessary* to prosecute the same; said timber to be cut in manner as directed by said Hall, and to be scaled by a competent scaler to be agreed upon by both parties and at their mutual expense. If

money is *advanced to Davis & Young* faster than advances are made to said Hall *by the parties* to whom said logs are sold, said *Davis & Young shall pay interest and exchange on the same* at the rate it will cost to hire at banks *until* said advances are *made on the logs.* Said Hall is to *receive* one-third of net *profits of said job* above expenses."

This instrument was produced in evidence and there was also testimony tending to show that Hall represented or allowed it to be represented to defendants in error that he was or would be responsible for debts incurred by Davis & Young in the lumbering in question, and that he had paid certain debts which had so arisen.

The plaintiff in error controverted these facts and denied being in partnership and insisted that the arrangement intended and actually signified by the written agreement was not one sufficient by itself in point of law to make him a partner.

He gave evidence tending to show that he owned the lands and the logs referred to; that Davis & Young were mere jobbers to whom he let the contract, and that he knew nothing of the sale of the goods by defendants in error until three or four months after their shipment.

He also offered to prove that before the contract was written and whilst the parties were conferring in regard to the price per thousand feet he should be required to pay to Davis & Young, he contended that the logs could be put afloat for a price less than was estimated by Davis & Young; that Davis observed if he (Hall) thought the cost would be no greater than his estimate, they (Davis & Young) would agree that he should have a rebate on $4.50 per thousand so as to bring the price to about the amount he considered they ought to receive; that the last clause in the writing was inserted to carry out this idea, and for no other end or purpose; that the parties constantly acted upon that construction and no other, and treated and applied the clause in regard to profits as only providing for repayment to or recoupment in favor of Hall of a part of the expressed price equivalent to a third part of the net profits.

This. offer of proof being objected to, the evidence was excluded. When the judge came to instruct the jury, he rejected several requests preferred by the counsel for Mr. Hall, and charged that the written contract by itself bound him as a partner and gave the defendants in error the right to recover against him. The jury found in accordance with this instruction. The case was consequently decided upon the judge's construction of the agreement and without aid from any sources outside of that instrument, and his construction of it was that it conclusively made out that on the 18th of October 1873, the plaintiff in error was a member of the firm of Davis & Young, to whom the defendants in error at that time sold and delivered the goods. I cannot concur in this view. The agreement was not well drawn and is marked by some obscurity, and is no doubt capable of receiving varying interpretations by different minds.

It is one of those instruments where terms susceptible of different meanings have been inserted in such connections that there is no ground upon their face for saying that one specific sense rather than some other is the necessary sense, and after careful analysis it appears to me the writing does not conclusively decide that Hall was or was not a member of the firm of Davis & Young at any time, and was not sufficient to exclude extrinsic evidence on that subject.

Waiving this consideration, however, there is another view which is decisive. The ruling made by the circuit judge, and which defendants in error contend for, rests upon and requires a rigid adherence to the words of the agreement, and rejects recourse to facts outside to show that the words were actually used in a special sense.

Hence, as we see, the defendants in error offered no evidence to induce an understanding of the terms in an admissible, but secondary or conventional sense, and the judge confined himself to the expressions as they stood unexplained.

Now if we assume the judge to have been correct in holding that the executory clause that Hall should "receive one-third of the net profits of said job above expenses" was of force to make him a partner, it must be conceded that it could be carried no further than to constitute him a partner during that "job." There is no fair ground for contending that the agreement was sufficient to expand the relation further. The writing appears to have been made August 11th, 1873, but it provided expressly that the "job" should be executed some months thereafter.

The enterprise was to be commenced and carried out in the "winter and spring of 1873 and 1874," and not earlier, and the fact that the scheme was formed in August is not controlling.

·According to the instrument in question, if it provided for the alleged relation at all, it contemplated that it should arise only on the arrival of the time for beginning the "job." At that time, and not sooner, the parties were to act together for the common purpose, and until that time their so coming together was executory. There was an agreement, but no partnership. If the plaintiff in error had died, no firm under the agreement would have been dissolved thereby.

As we have seen, the sale by defendants in error was made October 18th. This was six weeks before the beginning of the "winter" of 1873, and before the arrival of the time for the supposed partnership to commence if we adhere to the words of the writing, and as already stated, the proceedings confine the point to the very words.

Hence, if we admit the rule contended for by the defendants in error, the judge erred in holding the plaintiff in error liable as partner for the goods sold in October. There is no ground for saying that by force of the agreement by itself he had then become a partner.

If the relation arose at all as an effect of the unexplained terms of the writing, it arose at a later date than the sale. The case, therefore, on which the judge

ordered a verdict for defendants in error, was not one *prima facie* in their favor.

The judgment should be reversed with costs and a new trial ordered.

The other Justices concurred.